THE plaintiff had executed an obligation for payment, to Richard Randolph, the testator, of three hundred pounds, the price for a negro slave sold, the seller had acted so unfairly in the bargain that, if he and the buyer only had been interested, the latter ought to have been discharged from the obligation, 'but the court, on the 5th day of august, 1789, delivered an opinion, that the plaintiff was not intitled to relief against the obligation in the hands of the assignee, the defendent William Griffin, who having paid a valuable consideration for it, without knowledge of unfairness in the sale of the negro, and being impowered, by statute, made in 1748, (ch. 27 of the edit, in 1769, sect. 7,) to commence and prosecute an action in his own name, had a legal right to the money acknowledged by the obligation to be due, and whose equity was not less than the obligors equity, in consequence of which opinion the bill of the plaintiff, which was partly for an injunction to stay execution of a judgement recovered in an action upon the obligation by the assignee, was dismissed, as to that defendent.
Against this opinion, when the same question hath been several times since discussed iu other cases, were objected,
1, That it exalteth a derivative right over the primitive right, implying that the obligee may transfer a right which he hath not, or a greater right than he hath, to the assignee.
2, That the opinion supposeth the assignees equity not to be less than the obligors equity, the truth of which was not admitted.
3, That the, doctrine, inculcated in the opinion, will encourage fraud and produce more inconvenience than the contrary doctrine, obligees, conscious that, that by their malversation, they were so obnoxious as that demands, in their own names, were not sustainable, will assign the obligations, and, becoming insolvent, which is said to have happened in the principal case, or removing to parts unknown, prevent or render ineffectual recourse to them by injured obligors, more reasonable would be to put the assignee in the same condition in which the obli *48 gee is ; for the assignee, before he accepts the assignment, might, by inquiry, be informed if the obligor admitted or denied the money to be justly due, whereas the latter can seldom or 'never give timely notice to the former of exceptions to the demand,
4, That, by equity of the .statute, which authorised com-, mencement and prosecutions of actions in the names of assignees, directing discounts, before notice of assignment, to be allowed,' obligations in the hands of assignees ought to be liable to objections which might be urged against them, if they had remained in the hands of the obligees. '
ANSWERS:
To the first objection, the opinion is not such a paradox as the objector supposed, if the obligation be such that the action upon it, brought by the obligee himself, would not be barred by any legal plea, the court of law could not hinder him from recovering a judgement and suing forth execution, although he should appear to have practised fraud in obtaining the obligation. the court of equity can restrain him, by injunction, from enjoying the benefit of his judgement, upon this principle ; that he who had injured the obligor, by foul dealing, should make reparation for it. the obligee, when he assigns the obligation, transferreth simply his right to the money thereby acknowledged to be due ; but doth not transfer, cannot transfer, thereby, his duty to make that reparation, (a) nor can be said to transfer a right which he hath not, although it be a right from enjoying which the court of equity may restrain him. but such a power cannot be warrantably exercised by that court against the assignee, if he were innocent of the fraud, because it would be manifestly forcing one man to make reparation for injury done by another man. and accordingly a court of equity doth never deprive the purchaser of a legal title, although unfairly acquired by the seller, if the purchaser were not an accomplice in or privy to the unfairness, consequently the assignee, who is not ajvarticeps crindnis, either by his own act or by acceptance of a title known by him to have been unfairly acquired, hath the same right to the money, acknowledged by the obligation to be due, as if it had been made payable to himself, with this difference only, that the assignee must allow discounts to which the obligor was inti tied against the obligee, the nature of which discounts will be explained in answer to the fourth objection.
The obligor, if, before discovering the unfairness in the sale, *49 he had paid the money to the seller, might have recovered it from him.
But could the obligor, before the discovery, paying the money to the assignee, have recovered it from the latter?
This indeed is only stating the case and propounding the question over again, with a circumstance which ought not to vary the determination, but which will exhibit more plausibly this defense, which the assignee might urge against the demand from him by the obligor of reparation for a wrong done by the obligeei have received what was confessedly due to m,e, and received it from, thee, who didst acknowledge thyself to he debitor for it; — i trusted the obligee on thy credit; — if thou hadst not enabled him to turn thee over a debitor to me, i might not have dealed with him, — might have required caution from him, — or might have recovered a judgement against him, before he became insolvent; finaly i have done thee no wrong.
The same defence urged by the assignee, before receipt of the money, ought, as .is conceived, to prevale ; for the following aphorism is believed to be a just rule ; of two innocent men, in which predicament are obligor and assignee in the principal case, the loss, which one must bear, ought to rest on him, by whose act it was occasioned ; because, without that act, the loss would have been prevented, in this case, the act which occasioned the loss was granting the obligation.
To the second objection, the reason of the opinion, namely, that the assignees equity is not less than the obligors equity, is still believed to be correct, for although where the pm ii i,y of one party and the equity of mother are homogeneous vmir quantities may be compared together, and their difference, if they be not equal, may bo determined as accurately, perhaps, as quantities, which are the subjects of geometrical calculation : yet the equity of an obligor, injured by the fraud of the obligee, and the equity of an assignee of the obligation, for vaina ble consideration, without notice, injured by loss of his debt, being so unlike, that they can not be compared together, ir order to shew which is the greater, must he supposed equal.
To the third objection, if the law be, as it is suppose .1 to be, in favor of the assignee, the court of equity' hath no power, in consideration of inconveniences, to change the law. that the inconveniences would be less, if the law were determined to Lo otherwise, is not granted ; because that it can be proved is not. believed, moreover the obligor in almost every case may, as is supposed, be secure against danger from an assignment: for recent and diligent prosecution of a bill in equity, for relief against *50 fraud in obtaining the obligation, will put a posterior assignee in the predicament of a lite pendente purchaser.
To the fourth objection. 1, the section of the statute, to which the objector alluded, is confined, by the terms of it, to such discounts as are admissible on trial of an issue, in an action at common law ; but the plaintiffs demand of a reparation,, in this case, is not of that nature, if damages, which may be recovered, by way of reparation, for a fraud, can properly be discounted against the debt due by obligation,, damages, which may be recovered for any other injury,, committed by the obligee, may be discounted in like manner ; which hath never been pretended. 2, the legislature, by allowing the action to be-commenced and prosecuted in the name of the assignee, is supposed to have intended to put him in the same state as the indorsee of a bill of exchange, against whom the drawer would not be intitled to such relief as he might have obtained against the payee. 3, a proviso in a statute restrains the enacting words-from operating upon the case described in Che proviso, butupon no other ; and accordingly, the proviso being in the nature of an exception, the maxim is exceptio probat regulam, or the enacting words apply to every ease but that- which is exempted-from them by the exception, and consequently the- proviso, by" the argumentwn a pari rations, or even a fortiori, cannot be extended by equity ; the proviso is a measure- limiting the extent of the enacting words, and, from the- nature of the thing, should no more be applied to any case, to which the- words of it have not adapted it, than it should be variable, in its reach, and especialy in this case, where the proviso warns the assignee, that the risque which he runs is, not that the- debt was-never due, but that it hath been paid, its original justice being supposed.-

 Some, perhaps, would rather say transfer his SUABILITY.

Note. — Theeases referred toby the Chancellor (p. 47) as- those- rmwhieh the-same question hath been since discussed, may have been Norton v.. Rose, and-Picket v. Mm~rh, 2 Wash. 233 and 255, in which the Court of Appeals, overruling the Chancellor, held “ That an assignee of a bond, or obligation, lakes the same subject to all the equity of the obligor; and that the onligur ought to-be allowed tu set off and disc< unt against the debt when claimed by the assignee any equitable demand respecting said debt, which he had a right to claim from, the original obligee.” See also, as some of the cases pari materia, Mayo v. Giles adm’r, 1 Munf. 533; Stockton v. Cook, 3 Munf. 68; McNeil et als. v. Baird, 6 Munf. 316; Broaddus et als. v. Rosson, et ux. and Moore et als v. Holcombe et al. 3 Leigh 12, and 597; Feazle v. Dillard et al., 5 Leigh 39; 6 Leigh, 230; Washington v. Pollard, 5 Grat. 532.